UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ANDREW MOSS,                           : 14 Civ. 2331 (PAC) (JCF)
                                       :
            Petitioner,                :          REPORT AND
                                       :          RECOMMENDATION
      - against -                      :
                                       :
JOHN COLVIN, Superintendent,           :
Mid-State Correctional Facility,       :
                                       :
            Respondent.                :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

      Andrew Moss brings this petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254, challenging his conviction for
criminal sale of a controlled substance in the third degree, a
class B felony under New York Penal Law § 220.39(1), following a
jury trial in New York State Supreme Court, New York County.  His
conviction was affirmed by both the Appellate Division, First
Department and the Court of Appeals, and the Supreme Court of the
United States denied review.  People v. Moss, 89 A.D.3d 600, 933
N.Y.S.2d 258 (1st Dep't 2011), aff'd sub nom., People v.
Echevarria, 21 N.Y.3d 1, 966 N.Y.S.2d 747 (2013), cert. denied,
Moss v. New York, ___ U.S. ___, 134 S. Ct. 823 (2013).  He is
presently serving a term of imprisonment of ten years, to be
followed by three years of post-release supervision.

      Mr. Moss alleges that the trial judge violated his Sixth
Amendment right to a public trial by closing the courtroom to the

1

general public during the testimony of the undercover officers involved in his arrest.  For the reasons that follow, I recommend that the petition be denied.

<u>Background</u>

On July 21, 2007, the petitioner was arrested for selling crack cocaine to an undercover police officer in the area of West 135th Street and Broadway in Manhattan.  (Tr. at 23, 25, 59).[1] According to the evidence presented at trial, an undercover police officer ("UC 2454") approached Keith Elam on the corner of 136th Street and Broadway around 8:00 p.m. and asked where he could buy some crack cocaine.[2]  (Tr. at 29-30).  Mr. Elam then led UC 2454 down Broadway to 135th Street where they encountered several men gathered around a mailbox, including Richard Morales, Eric Smith, and the petitioner.  (Tr. at 32-33).  Mr. Elam asked for ten small Ziploc bags of crack cocaine for a total price of $100, and the petitioner proceeded to hand him what he requested.  (Tr. at 34-36).  During the exchange, Mr. Elam dropped the bags and UC 2454 quickly retrieved them.  (Tr. at 35).  UC 2454 then handed $100 in pre-recorded buy money directly to the petitioner.  (Tr. at 36).

After departing with UC 2454, Mr. Elam was apprehended shortly

---

[1] "Tr." refers to the transcript from the state court trial.

[2] "UC" refers to an undercover police officer.  "2454" refers to that officer's police department shield number.

thereafter by UC 2454's field team, including UC 5986, UC 2454's "ghost" officer.[3] (Tr. at 48). UC 2454 then returned to his undercover auto, positively identified Mr. Elam, and proceeded to radio his team to provide descriptions of the remaining participants in the exchange, including the petitioner. (Tr. at 48-49, 52). UC 2454 then drove back to the southwest corner of 135th and Broadway and parked across the street to provide positive identifications of the three remaining men. (Tr. at 52-54). The petitioner was arrested by UC 2454's field team, and UC 5986 recovered $80 dollars in pre-recorded buy money from the petitioner's front pants pocket. (Tr. at 253-55).

The trial took place before Justice Daniel Fitzgerald. Prior to trial, the prosecution moved to close the courtroom to the public during the testimony of both UC 2454 and UC 5986. On May 12, 2008, Justice Fitzgerald conducted a <u>Hinton</u> hearing, which is an <u>in camera</u> proceeding to determine the appropriateness of excluding the public during trial testimony. <u>People v. Hinton</u>, 31 N.Y.2d 71, 334 N.Y.S.2d 885 (1972). The assistant district attorney argued that the proceedings should be closed to the public in order to protect the safety of the undercover officers as well

---

[3] A "ghost" officer is one who, during a buy-and-bust operation, "serves as a backup while the primary undercover officer purchases the contraband material." <u>Graham v. Lape</u>, 476 F. Supp. 2d 399, 400 n. 1 (S.D.N.Y. 2007).

as preserve their ability to continue undercover operations. (H. at 80-82).[4] Mr. Moss' counsel objected, arguing that his right to a public trial would be violated and that UC 2454's safety concerns did not warrant closure of the courtroom. (H. at 74). In the alternative, he suggested that the petitioner's public trial right could be preserved through alternate means, including admitting the petitioner's family members and stationing a court officer at the door of the courtroom to screen the people entering. (H. at 76-77). The court ruled that the courtroom would be closed during the testimony of both undercover officers. Justice Fitzgerald would determine, on a case-by-case basis, whether members of the petitioner's family, including his mother, would be allowed to be present. (H. at 83).

At the conclusion of the trial, the petitioner was convicted of one count of criminal sale of a controlled substance in the third degree. (Tr. at 635-36). On appeal, he contended that the court's decision to close the courtroom during the testimony of UC 2454 violated his Sixth Amendment right to a public trial. He argued that (1) the prosecution failed to "advance an overriding interest that [was] likely to be prejudiced" in the absence of closure and (2) the trial court neglected to "consider reasonable

_____

[4] "H." refers to the transcript of the Hinton hearing held on May 12, 2008.

4

alternatives to closing the proceeding," in violation of the requirements for courtroom closure the Supreme Court's established in <u>Waller v. Georgia</u>, 467 U.S. 39, 48 (1984). These arguments rely on prongs one and three of the four-pronged <u>Waller</u> test for courtroom closure: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced . . . and [3] the trial court must consider reasonable alternatives to closing the proceeding." <u>Waller</u>, 467 U.S. at 48; <u>see also</u> <u>Echevarria</u>, 21 N.Y.3d at 11, 966 N.Y.S.2d at 753 ("Only [<u>Waller</u>'s] first prong (overriding interest) and third prong (reasonable alternative) are at issue."). On November 22, 2011, the Appellate Division, First Department, affirmed the judgement of conviction. <u>Moss</u>, 89 A.D.3d at 601, 933 N.Y.S.2d at 258.

The New York Court of Appeals granted review of the petitioner's appeal and affirmed the judgement of conviction. <u>Echevarria</u>, 21 N.Y.3d at 26, 966 N.Y.S.2d at 764. The Supreme Court denied certiorari on December 13, 2013. <u>Moss</u>, __ U.S. at __, 134 S. Ct. at 823. Mr. Moss then filed the instant petition for a writ of habeas corpus, raising the same arguments as in his appeals to the Appellate Division and the New York Court of Appeals, and supplementing his argument as to the third prong by relying on the Supreme Court's statement in <u>Presley v. Georgia</u>, 558 U.S. 209 (2010), that "trial courts are required to consider

5

alternatives to closure even when they are not offered by the parties." (Memorandum of Law in Support of Petitioner Andrew Moss's Petition for a Writ of Habeas Corpus ("Pet. Memo."), at 1 (quoting Presley, 558 U.S. at 214)).[5]

Discussion

    A.   Legal Standard

Prior to the passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law or mixed questions of law and fact. See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir.2002). Under the AEDPA, however, federal courts may not grant a writ of habeas corpus unless the state

---

[5] There is some question whether the petitioner intended to advance an additional argument based on Waller's fourth prong that had not previously been raised. (Answer, ¶ 6(b); Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo."), at 37-39). However, the petitioner's memorandum does not expressly lay out this argument, and the reply memorandum does not pursue it further. (Reply Memorandum of Law in Support of Petitioner Andrew Moss's Petition for a Writ of Habeas Corpus ("Reply") at 11 ("Petitioner here raises the same Constitutional issues that were raised in and decided in the New York Court of Appeals."), 14 ("The Constitutional issues of the State court's violations of Waller's first and third prongs were fully presented to the State courts, and decided by those courts.")). I will therefore only consider the arguments under Waller's first and third prongs.

court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); see Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001). This deference is only required where the state court "adjudicated [the claim] on the merits," 28 U.S.C. § 2254(d); otherwise, the pre-AEDPA, de novo standard of review applies. Noble, 246 F.3d at 98; Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).

In Williams v. Taylor, 529 U.S. 362, 405-08 (2000), the United States Supreme Court differentiated between the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). It held that a state court decision is "contrary to" federal constitutional law if the decision either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Id. at 405. By contrast, a state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if the court either "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or

7

unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407.

The Sixth Amendment to the United States Constitution affords all criminal defendants the "right to a speedy and public trial." U.S. Const. amend. VI.  A public trial ensures that "the public may see [that the accused] is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions[.]" <u>Gannett Co. v. DePasquale</u>, 443 U.S. 368, 380 (1979) (internal quotation marks omitted).  "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." <u>Waller</u>, 467 U.S. at 46 (citations omitted).

However, the right to a public trial is not absolute, and in certain circumstances it may yield to other interests. <u>Id.</u> at 45. In <u>Waller</u>, the Supreme Court outlined a four-part test that must be met before public access to a criminal proceeding may be denied: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to

8

support the closure." Id. at 48. Denying the accused a public trial without satisfying all four prongs of the test is a violation of the Sixth Amendment. Id. at 46-48.

    B.   Application

       1.   Interests Justifying Closure

In order to meet the first requirement of the Waller analysis, the party seeking closure must offer evidence of an "overriding interest that is likely to be prejudiced" if closure is denied. Waller, 467 U.S. at 48. The mere possibility of prejudice is insufficient to meet this standard; rather, the state must show a "substantial probability" that prejudice will result from taking testimony in open court. Press-Enterprise Co. v. Superior Court of California, 478 U.S. 1, 14 (1986). The Second Circuit has recognized two distinct state interests that may be characterized as overriding: ensuring the safety of an undercover officer and maintaining the effectiveness of a law enforcement agent acting in an undercover capacity. Brown v. Kuhlmann, 142 F.3d 529, 537-38 (2d Cir. 1998); Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997). "[T]he mere possibility that this safety interest might be compromised by open-court testimony does not justify abridgement of a defendant's constitutional right to a public trial." People v. Ramos, 90 N.Y.2d 490, 498, 662 N.Y.S.2d 739, 743 (1997). In order to justify closure, "a specific link must be made between the

officer's safety and open-court testimony in the particular buy-and-bust case." Id.

Here, the Court of Appeals reviewed the transcript of the Hinton hearing and concluded that "the record amply supports the trial court's determination that a specific link existed between the officer's safety and his open-court testimony." Echevarria, 21 N.Y.3d at 14, 966 N.Y.S.2d at 755. The facts in this case support the Court of Appeals' conclusion regarding UC 2454's safety concerns. Despite his primary assignment in a different precinct (H. at 61), UC 2454 could not predict how soon he would return to work in the area where he made the arrest (H. at 69-70). He had made 30-40 arrests in that same area following the one in this case (H. at 51), and he acknowledged receiving threats on multiple occasions throughout his tenure as an undercover officer (H. at 54-55). UC 2454 noted that he had multiple pending cases involving buy-and-bust arrests (H. at 51), some of which involved "lost subjects" or defendants out on bail who frequented the area of 135th and Broadway (H. at 26). In addition, he stated that he walks and shops in the area with his family when he is off-duty. (H. at 53). Considering that UC 2454 already took regular precautions when entering the courthouse to avoid having his identity discovered (H. at 58), and the fact that potential defendants came in and out of the courtroom throughout the day (H.

at 76), the trial court was justified in finding that "enough [had] been shown as to both [undercover officers] that would jeopardize their safety and job" if the public were allowed in the courtroom (H. at 82).

Likewise, the facts support the State's overriding interest in maintaining the effectiveness of a law enforcement agent acting in an undercover capacity.  Ongoing and future investigations in the same neighborhood could have been compromised if UC 2454 had been forced to testify in an open courtroom.  (H. at 52, 53, 59). Therefore, because Justice Fitzgerald based his decision on the risk to the officer's effectiveness and on concern for the officer's safety (H. at 82), the first prong of the Waller test was fulfilled.  See Pearson v. James, 105 F.3d 828, 829 (2d Cir. 1997) (holding first prong satisfied because officer testified that her undercover activity was continuing in same neighborhood where she purchased cocaine from defendant); Okonkwo v. Lacy, 104 F. 3d 21, 25 (2d Cir. 1997) (holding that trial court had properly relied on "jeopardy to the undercover officer's effectiveness"); Aquayo v. Headley, No. 96 Civ. 2918, 1997 WL 217589, at *3 (S.D.N.Y. May 1, 1997) (holding that interest of State or law enforcement agency in maintaining cover and effectiveness of its agents is sufficient to satisfy first prong).

11

2.   <u>Reasonable Alternatives</u>

Under the third prong of <u>Waller</u>, "the trial court must consider reasonable alternatives to closing the proceeding." <u>Waller</u>, 467 U.S. at 48.  Here, Mr. Moss contends that the Supreme Court's decision in <u>Presley</u> mandates that such considerations must be explicitly stated on the record.  (Pet. Memo. at 1; Reply at 1-2); <u>see</u> <u>Presley</u>, 558 U.S. at 214).  By contrast, the respondent asserts that such explicit consideration is not required by <u>Presley</u>.  (Resp. Memo. at 33).  The respondent goes on to quote the New York Court of Appeals, arguing that <u>Presley</u> "did not break new ground,[] and it nowhere states that it is incumbent on trial courts, regardless of the circumstances, to engage in a verbal on-the-record review of all potential alternatives before opting for a limited closure."  (Resp. Memo. at 33) (quoting <u>Echevarria</u>, 21 N.Y.3d at 18, 966 N.Y.S.2d at 758).  The Court of Appeals went on to reiterate that "where the record in a buy-and-bust case otherwise suffices to establish the need to close a particular portion of the proceeding . . . 'it [could] be implied that the trial court, in ordering closure, determined that no lesser alternative would protect'" the undercover officer's safety. <u>Echevarria</u>, 21 N.Y.3d at 18-19, 966 N.Y.S.2d at 758 (quoting <u>Ramos</u>, 90 N.Y.2d at 504, 662 N.Y.S.2d at 747).

Whatever the validity of the Court of Appeals' interpretation

12

of Presley, it is apparent that Justice Fitzgerald both considered the alternatives suggested by the petitioner's counsel and adopted a portion of them as an alternative to full closure.  Accordingly, the Court of Appeals was correct to "perceive no prong three violation."  Echevarria, 21 N.Y.3d at 19, 966 N.Y.S.2d at 758. After both undercover officers testified, Justice Fitzgerald suggested, "I'll hear from [counsel] if there's anything further you wish to say; my position at the moment tentatively unless someone disabuses me of it, [is that] enough has come out so that I will keep the general public out when these two undercovers testify."  (H. at 72-73).  In response to this solicitation of alternatives, the petitioner's trial counsel proposed several precautions that could be taken: "A court officer [could] be stationed at the door. . . .  Mr. Moss' family [could] come in.  If there's anyone suspicious [or] of a dubious background who wants to come in, that could be taken up with the judge at an appropriate time."  (H. at 76).

The petitioner claims that "[t]he trial court did not so much as acknowledge this proposed alternative.  Nor did the court utter a single word about this or any other alternative to closure in ordering the courtroom closed to the general public."  (Petition for a Writ of Habeas Corpus by a Person in State Custody, ¶ 26). That is erroneous.  After hearing the proffers of counsel, Justice

13

Fitzgerald determined that "[a]s to the general public enough has been shown as to both these individuals that would jeopardize their safety and job" but that he "[had] to focus when it comes to the family" because "family should be here, as long as they're not living in the area.  But, as they say in [People v.] Alvarez[, 51 A.D.3d 167, 854 N.Y.S.2d 70 (1st Dep't 2008)] and [People v.] Goris[, 305 A.D.2d 178, 758 N.Y.S.2d 65 (1st Dep't 2003)], if they're living in the precise area where these officers are potentially coming back to, there can be a concern.  I'll have to face those decisions when they arise."  (H. at 82-83).  Justice Fitzgerald thus addressed both the petitioner's suggestions that he "permit and allow family members to come in" and that "[i]f there's anyone suspicious of a dubious background who wants to come in, that can be taken up with the judge at an appropriate time."  (H. at 76-77).  He considered and accepted both of these alternatives, at least as to the petitioner's family members, when he granted Mr. Moss' mother access to the courtroom and stated, "I'll have to face those decisions [about other family members] when they arise."  (H. at 83).

In the alternative, the petitioner argues that "allowing an accused person's parent to remain in a courtroom that is otherwise closed to the public during the most critical testimony in a criminal trial is not an alternative to closing the courtroom to

the public." (Pet. Memo. at 19).  In fact, this is not an accurate

portrayal of the trial court's closure order.[6]  Nor is it correct

to assert that "under Presley, exempting close family members from

a closure order cannot be an 'alternative[] to closure.'"  (Pet.

Memo. at 21).  The Court in Presley found error because the trial

court failed to consider possible arrangements to seat both

potential jurors and members of the public, even when "[n]othing in

the record show[ed] that the trial court could not have

accommodated the public at Presley's trial." Presley, 558 U.S. at

215.  In doing so, the Court held that potential alternatives, such

as "reserving one or more rows for the public; dividing the jury

venire panel to reduce courtroom congestion; or instructing

prospective jurors not to engage or interact with audience

members," needed to be considered, even if they had not been

proffered by counsel. Id. at 215-16.  The fact that the member of

the public excluded was Presley's uncle was not determinative.

Rather, the Court took issue with how the public was excluded, not

who was excluded.  As such, Presley does not preclude the trial

court in this case from conducting case-by-case determinations for

---

[6] Mr. Moss' mother may have been the only family member
present, but that does not mean she was the only family member
allowed to attend.  Justice Fitzgerald's order is clear; should
other family members have wished to attend, he was prepared to
decide each application on an individual basis.  (H. at 83).

family members as an alternative to complete closure.  In deciding to do so on the suggestion of the petitioner's counsel, Justice Fitzgerald met his obligation under <u>Waller</u>'s third prong.

Notwithstanding the petitioner's characterization of <u>Presley</u>, the trial court's decision was neither contrary to, nor an unreasonable application of, the clearly established Federal law established by the Supreme Court's decisions in <u>Waller</u> and <u>Presley</u>. 28 U.S.C. § 2254(d)(1).

<u>Conclusion</u>

For the reasons set forth above, I recommend that Mr. Moss' petition for a writ of habeas corpus be denied.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 62, 6(a), and 6(d) of the Federal Rules of Civil Procedures, the parties shall have fourteen days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, U.S.D.J., Room 1350, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       August 4, 2014

Copies mailed this date to:

Richard M. Greenberg, Esq.
Joseph M. Nursey, Esq.
Office of the Appellate Defender
11 Park Place
Suite 1601
New York, NY 10007

Paul Bernard Lyons, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271

17